# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

U.S. Water Services, Inc.,

        Plaintiff,

v.

**MEMORANDUM OPINION AND ORDER**
Civil No. 13-3092 ADM/TNL

International Chemstar, Inc.,

        Defendant.

_____

Ansis Viksnins, Esq., Bruce Little, Esq., and Daniel Schwartz, Esq., Lindquist & Vennum PLLP, Minneapolis, MN, for Plaintiff.

John Bourgeois, Esq., Kramon & Graham PA, Baltimore, MD; and, David Wallace-Jackson, Esq., John Ursu, Esq., and Kathryn Hibbard, Esq., Greene Espel PLLP, Minneapolis, MN, for Defendant.

_____

## I. INTRODUCTION

On November 20, 2013, the undersigned United States District Judge heard oral argument on Plaintiff U.S. Water Services, Inc.'s ("US Water") Motion for Temporary Restraining Order [Docket No. 4]. For the reasons set forth below, US Water's motion is denied.

## II. BACKGROUND

The parties are competing industrial and commercial water treatment companies. In January 2013, Plaintiff US Water and Defendant International Chemstar, Inc. ("Chemstar") entered negotiations about a possible merger or acquisition. To promote negotiations, the parties entered into a Mutual Confidentiality Agreement dated January 1, 2013. See David G. Boyle ("Boyle") Decl. [Docket No. 10] Ex. A. On February 17, 2013, the parties amended the Mutual Confidentiality Agreement to add noncompete provisions. Id. Ex. B ("Noncompete Agreement"). The parties considered a Letter of Intent in April 2013, but ultimately, in June

2013, negotiations concluded without a final agreement.  Id. Ex. C.

On October 31, 2013, US Water completed the acquisition of another competitive water treatment company, Water Chemical Services, Inc. ("Waterchem").  On November 8, 2013, Ronald L. Leach, a sales manager for Waterchem, resigned from Waterchem (newly part of US Water).  He intends to become, or is, a new employee of Chemstar.

US Water claims Chemstar is in breach of the Noncompete Agreement by recruiting and hiring Leach.  US Water also claims Chemstar is liable for tortious interference with Leach's employment agreement with Waterchem and for interference with US Water's prospective economic relations.  US Water seeks a temporary restraining order ("TRO") to prevent Leach from joining Chemstar.

## III.  DISCUSSION

**A.  Venue**

Chemstar was served with process on November 13, 2013.  The date by which it must answer or make a motion in response to the Complaint is December 4, 2013, but as a threshold issue, Chemstar argues this case was filed in the wrong venue.  Accordingly, Chemstar intends to respond to the Complaint by filing a Motion to Dismiss under Federal Rules of Civil Procedure 12(b)(3) and 12(b)(6).  Chemstar argues its improper venue defense will be based on the Mutual Confidentiality Agreement.  The January 2013, Mutual Confidentiality Agreement states:

> This Agreement shall be governed by and construed and interpreted in accordance with the substantive laws of the State of Maryland. . . . Any disputes arising out of this Agreement shall be venued in federal or state district court in the State of Maryland, and each Party hereby consents to the jurisdiction of such court.

Id. Ex. A, at 3.  US Water responds that it is not suing Chemstar based on the Mutual Confidentiality Agreement, but rather on Noncompete Agreement, which US Water claims is an

2

independent contract.

US Water's argument is flawed because the Noncompete Agreement appears to incorporate the previous agreement, stating the noncompete provisions are "in addition to the above referenced Mutual Confidentiality Agreement." Noncompete Agreement 1. This issue has not been fully briefed, but the Court has serious questions about whether Minnesota is the appropriate venue for this cause of action. If the parties proceed with litigation in this district, they should plan to address this issue in any future motion briefing.

**B. Standard of Review for TRO**

Courts weigh four factors in determining whether to grant injunctive relief: (1) the threat of irreparable harm to the moving party if an injunction is not granted; (2) the harm suffered by the moving party if injunctive relief is denied as compared to the effect on the non-moving party if the relief is granted; (3) the probability that the moving party will succeed on the merits; and (4) the public interest. Dataphase Sys., Inc. v. CL Sys., Inc., 640 F.2d 109, 113 (8th Cir. 1981). The fundamental question "is whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined." Id. The movant "bears the burden of establishing the necessity of this equitable remedy." Gen. Motors Corp. v. Harry Brown's, LLC, 563 F.3d 312, 316 (8th Cir. 2009).

**C. Dataphase Factors**

No Dataphase factor is dispositive; instead, each factor is to be considered when determining the balance of equities. United Indus. Corp. v. Clorox Co., 140 F.3d 1175, 1179 (8th Cir. 1998).

**1. Likelihood of Success on the Merits**

US Water argues that under either Minnesota or Maryland law, the Noncompete Agreement is enforceable and prevents Chemstar from hiring Leach. Mem. Supp. TRO [Docket No. 5] 9-15. However, the Court need not consider the enforceability of the noncompete provisions of the contract because US Water faces a more basic barrier to success on the merits. Chemstar argues the terms of the Noncompete Agreement do not restrict Leach from seeking employment with Chemstar, nor do they prevent Chemstar from hiring Leach because Leach was not a "current" employee of US Water during the Parties' merger negotiations. Based on the Parties' limited briefing, the Court agrees.

US Water has not shown a likelihood of success on its breach of contract claim. US Water and Chemstar restricted three categories of competition: (1) the parties agreed not to compete for the other party's customers directly or indirectly for six months; (2) the parties agreed not to request specific customer information from each other until they had agreed on a Letter of Intent; and finally, (3) the parties agreed not to hire "an individual who is <u>currently employed</u> by the other . . . for a period of 12 months." Noncompete Agreement at 1 (emphasis added). US Water argued at the TRO hearing that the third provision restricts the competitive hiring of current and future employees during the 12 months that the Noncompete Agreement is in force, that is, until February 17, 2014. Chemstar argues the contract did not anticipate mergers and acquisitions of future employees. Chemstar argues the plain language of the contract, namely the word "currently," relieves the parties of the concerns about future acquisitions or future hiring conflicts.

The Court finds that it is more likely that "currently" has its commonly used meaning.

Restricting the hiring of "currently employed" members of each party prevented the parties from using merger and acquisition negotiations to scout and recruit employees who were working for their competitor during their negotiations. It is hard to imagine the parties agreeing to restrain all future hiring, including through future acquisitions.

Although the only contract at issue in this case is the one between US Water and Chemstar, the Court notes that under US Water's theory of the case, Leach would be effectively restrained by the Parties' Noncompete Agreement. Minnesota law views noncompetition agreements as restraints on trade, and Minnesota law disfavors restraints on trade. Nat'l Recruiters, Inc. v. Cashman, 323 N.W.2d 736, 740 (Minn. 1982); see Matson Logistics, LLC v. Smiens, No. 12-400, 2012 U.S. Dist. LEXIS 77454, at *9-10 (D. Minn. June 5, 2012) (noncompetition agreements are disfavored). Maryland law also analyzes a noncompete agreement in light of the specific facts of the case and the agreement is only enforceable, "if the restraint is confined within limits which are no wider as to area and duration than are reasonably necessary for the protection of the business of the employer and do not impose undue hardship on the employee or disregard the interests of the public." Ruhl v. F.A. Bartlett Tree Expert Co., 225 A.2d 288, 291 (Md. 1967) (internal quotations omitted). Even if the Noncompete Agreement applied to Leach, the Court would still have to determine whether the Noncompete Agreement is enforceable. Based on the limited facts in the record, it is unlikely the Noncompete Agreement is enforceable as to Leach under either Minnesota or Maryland law.[1]

---

[1] Leach has submitted to the Court a copy of his employment contract with Waterchem, signed October 6, 1997. Ronald L. Leach Decl. [Docket No. 11] Ex. A. US Water has argued that Leach may have breached his contract, but Leach has not been sued for breach of his contract.

There is evidence suggesting Leach reached out to Chemstar as early as October 15, 2013. US Water did not close its acquisition of Waterchem until October 31, 2013 and Waterchem employees, including Leach, were not told of the transaction until October 30, 2013. A Noncompete Agreement between competitive companies that restricts a non-party company's employees, without giving those employees the chance to bargain for their rights, is not likely to be found enforceable.

### 2. Threat of Irreparable Harm

A motion for injunctive relief must fail unless the movant demonstrates a threat of irreparable harm. Dataphase, 640 F.2d at 114 n.8; Gelco Corp. v. Coniston Partners, 811 F.2d 414, 418 (8th Cir. 1987) (irreparable harm is a threshold requirement for preliminary injunctive relief). Two legal considerations are relevant to this case. First, irreparable harm is shown if a party establishes "the harm is certain and great and of such imminence that there is a clear and present need for equitable relief." Iowa Utils. Bd. v. F.C.C., 109 F.3d 418, 425 (8th Cir. 1996). Threat of irreparable harm requires more than a possibility of remote future injury; it requires a presently existing actual threat of injury. Rogers v. Scurr, 676 F.2d 1211, 1214 (8th Cir. 1982). Second, "irreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages." Rogers Grp., Inc. v. City of Fayetteville, Ark., 629 F.3d 784, 789 (8th Cir. 2010) (quoting Gen. Motors, 563 F.3d at 319).

Taking these considerations in order, first, US Water provides scant evidence that the threat of irreparable harm is "certain and great and of such imminence that there is a clear and present need for equitable relief." Iowa Utils. Bd., 109 F.3d at 425. US Water argues that since

Leach was Waterchem's sales manager for 16 years, he has essential relationships with many of Waterchem's customers and is familiar with Waterchem's business and confidential information. US Water claims it is likely to suffer irreparable harm because Leach will assist Chemstar in acquiring Waterchem's customers and will disclose Waterchem's confidential customer information. But there is no evidence in the record of loss suffered, and US Water's anticipation of future harm is speculative at best. Chemstar has made clear its intention of honoring the non-solicitation provisions in Leach's contract with Waterchem and no evidence has been presented to the contrary. US Water has not presented any evidence of Leach or Chemstar attempting to improperly solicit customers. Therefore, US Water has not shown that the threat of harm is certain, great, or of an imminent nature.

Second, when monetary damages can compensate for present or potential harm, a plaintiff is not entitled to injunctive relief. Rogers Grp., 629 F.3d at 789. The time frame within which damage could occur under US Water's theory of its breach of contract claim is November 1, 2013, until February 17, 2014. US Water argues that this is an essential time for its transition to ownership of Waterchem and for its goodwill relations with current and future customers. US Water is concerned that monetary damages will not compensate for its potential loss of business to Chemstar. But courts have held that such a claim is insufficient without more particularized evidence and allegations. City Cycle IP, LLC v. Caztek, Inc., No. 12-1285, 2012 U.S. Dist. LEXIS 121589 (D. Minn. Aug. 24, 2012) (plaintiff failed to establish how its reputation and goodwill had been or might be damaged). There is no evidence Chemstar or Leach have been in contact with Waterchem customers. Therefore, the Court has no evidence to find a potential loss of goodwill. All other potential damages, such as the loss of a customer's business due to Leach

and Chemstar's improper solicitations are compensable through a monetary damages award.

### 3. Balance of Harms

Leach has left US Water and joined Chemstar. US Water and Chemstar agree that if it applies to this situation, the Noncompete Agreement is effective only until February 17, 2014. Therefore the harm to either party is fairly limited. US Waters believes that losing Leach to Chemstar could result in the loss of Waterchem's goodwill and potentially the loss of Waterchem's customers. If the Noncompete Agreement is enforced, Chemstar would lose the business Leach could generate for the three months between now and the end of the Noncompete Agreement. As presented, US Water's loss is potentially greater. However, the greatest potential harm is to Leach himself, who would lose for at least three months the opportunity to be employed by Chemstar, despite the fact that he never signed or agreed to a noncompete agreement with any party. Given the likelihood of success on the merits, the speculative nature of the threat of irreparable harm, and the clear harm to Leach, the balance of harms cannot outweigh the other Dataphase factors.

### 4. The Public Interest

The final Dataphase factor is the public interest. Dataphase, 640 F.3d at 113. Generally, the public interest favors enforcing contracts. Benfield, Inc. v. Moline, 351 F. Supp. 2d 911, 919 (D. Minn. 2004). In this case, the validity of the Noncompete Agreement as to Leach is not clear and the issue of breach is disputed. The public's interest in favor of enforcing this contract should await the clearer determination of the underlying facts.

## IV.  CONCLUSION

Based upon all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Plaintiff's Motion for Temporary Restraining Order [Docket No. 4] is **DENIED**.

BY THE COURT:

s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  November 22, 2013.